Johnston, Ch.,
delivered the opinion of the Court.
The enormous results of the accounts, as taken, are forcibly pointed.out in the decree : and lead irresistibly to the conclusion, that error exists somewhere in the proceeding.
But, though we are greatly disposed to exonerate the defendant, Price, as far as possible, from these results; .we cannot consent to do so, by what appears to us to be a misconstruction of the marriage settlement.
Our opinion is, that, by a sound interpretation of that instrument, it can operate only upon the third part of the estate, to *195 which Mrs. Price was entitled; and that the children were to be maintained and educated out of the income, (and, if necessary, the capital) of that portion, only, of the estate: leaving the other two-thirds, with its income, to be accounted for, by the administrator, as the property of the children.
Let us read such portions of the settlement as relate to this point, bearing in mind, at the same time, that Mrs. Price, the settler, had no power to dispose of any thing beyond her own property. After reciting the marriage contemplated between herself and Price, and that she had four children, and was entitled to a third part of her late husband’s estate, with a proportionate share of the rents, profits and increase thereof, — the settlement proceeds to state, that - “ it hath been agreed, that the said D. B. Price, after the said intended marriage, should receive and enjoy the said property belonging to the said Martha, during the said marriage, — he appropriating so much thereof as may be necessary to the purpose of boarding, clothing and tuition of the said children,” — “ with the physician’s bills and other expenses, — and making no charge against them, for said purposes.” Here we have an exact description of the property to be settled, and an annunciation of the objects and terms of the settlement. Then follows the conveyance of the property by its owner, in which she conveys, to the trustee, “ all and singular her right, title and interest ” in “ her undivided third part of the real and personal estate and choses ” of her late husband, and of “ the rents, increase, interests and profits thereof,” since his death: in trust, that J. D. Price, the trustee, “ shall suffer the said D. B. Price,” the husband, “ to use, have, receive, occupy and enjoy all the interests and profits of the said property.” Now, what property can this expression refer to, other than that, before described, as the property, or share, of Mrs. Price, which she had conveyed to the trustee, and, as to which alone, he, as legal owner had power to suffer, or allow, the use to the husband ? The instrument immediately proceeds, after thus speaking of the use of the said property, in a parenthetical form, to throw in the provision, “ (allowing the property, itself, to remain undivided.)” This *196 evidently refers to the said property : i. e. to the thirds of the •widow, which she had granted, and of which the trustee was to allow the use to the husband.
But, to continue. It was to be kept together and the use of it allowed to the husband, “ so long as the said marriage shall continue,” i. e. during the joint lives of the married parties. But it “ shall not continue unto the said D. B. Price after the termination of the said marriage,” i. e. if he shall become the survivor by the death of his wife, “ longer than the term at which the eldest of the said children shall arrive at the age of twenty-one years, or marry.” What is to be done with it in that event ? The instrument answers, it is “ to be equally divided, and delivered to the survivor, or survivors, of the said children.” Until that time it is “ to remain undivided.” The reference is constantly to the same property ,• and that is the widow’s share. This the husband is to have the use of; and the stipulation is, that, having this use — “ the said D. B. Price shall maintain and educate the said children,” “ without making any charge against them, or either of them:” and, lest the income of the settled property might not suffice, for accomplishing this purpose, the trustee is to “ permit the said D. B. Price to use the principal of the said property.” (This certainly cannot refer to the general estate, over which the trustee had no control.)
And the deed closes by a provision which shows that, throughout, the widow’s share alone was in the mind of the parties. The provision is, that, if Mrs. Price should survive her husband, the trustee should re-convey her third to her, or what might remain of it) unexpended.
Thus it appears, from a fair reading of the deed, that the husband, so far from being entitled to charge either the principal or income of the children’s own shares, was bound to exonerate these shares from all charge, by employing the income, and, if necessary, the principal of his wife’s share, which was settled, for their maintenance and education.
We think this settlement was good as between the parties and • the trustee. The informalities pointed out by the Commissioner *197 might possibly vitiate it as against John N. Williams,-the surety to the joint administration of D. B. Price and wife; but if it were set aside, it could not benefit this surety. A joint administration granted to husband and wife, according to the case of Span vs. Stewart, (a) is a grant to the husband alone ; though according to Adair vs. Shaw, (b) it would be different with respect to an administration in the wife dum sola, and conferred by operation of law upon the husband, by her marriage to him.
Where administration is granted to husband and wife jointly, the administration is that of the husband alone. The bond given by Price and wife, to which Mr. Williams became surety, was the bond of Price alone, and Williams lent .credit to him exclusively. Putting the settlement out of the question, Mr. Williams is entitled to go against this property, only in case Price’s marital right has attached upon it. But the Court of Errors determined, in a case lately decided in Charleston, that where the wife’s share was never severed from the bulk of the estate (as in this case) the marital right could not attach. The Court would execute the equity of the wife — and, I suppose, wbuld, in so doing, conform to intentions expressed in a previous settlement, agreed on by the parties, though it may have proved ineffectual.
The Court is satisfied, however, with the decree that the interest of Mrs. Price in the share of the deceased child, or children, should be subjected.
We come, now, to consider how the account should have been taken, in regard to the two-thirds of the estate belonging to the children.
The only distinction we can discover between this case and those which generally occur, is, that this estate was a planting estate, and that the account filed by Mrs. Price is now 17 years old.
Undoubtedly the profits of a planting establishment are not to be judged of, in all cases, by estimates in detail of the hire of the slaves and the rents of the land. The hire of such slaves *198 as are actually hired out, and the rent of such lands as are actually let out, must be accounted for according to the proceeds of the hiring or letting. But when the property is kept together, (unless we have an account of its actual profits,) the profits must be made out by general estimates. And, as in Rainsford vs. Rainsford, (a) and in Pye vs. Carr, (b) where the increase of the property itself is the result of its not having been used with exclusive reference to the production of profits, we must allow the increase to stand, to a certain extent, in the place of profits.
9 In the account before us, we think it would be allowable for the Commissioner, — while he may receive evidence of the probable hire and rent of the particular parts of the estate, — at the same time to receive general estimates of the profits of the estate, as a whole, reference being had to its condition : and that credits should be allowed for all probable expenses of such an estate: — (excluding, of course, in this case, the expenses of the family.)
And we think, that in such a case as this, where such liberality was extended to the children, by the mother and step-father, as to exonerate their estates from the expenses of nurture and tuition, the account should be taken with great liberality towards the parents. Doubtful charges against them should be excluded ; they should not be held to a strict account; and the lowest liability of which the evidence, reasonably inter-terpreted, is capable, should be established against them.
If I understand, aright, that part of the case relating to the building and rent of a dwelling house: there should be some reform of the report in that subject. I understand the administrators have been charged for the rent of the premises, as improved by them : while, at the same time, they are denied credit for the value of the improvements. I think rent is not allowaable for premises which the tenant has rendered capable of yielding rent, if they did not yield rent before: and that, by parity of reasoning, the tenant is not chargeable, for so much of the rent of the premises, as his improvements have contributed *199 to produce. At the same time I am content, — -in this case,— that the tenant should have credit, not for the cost of the improvements, but for the value they imparted to the premises.
Upon the subject of the return to the ordinary, there is much difficulty.
Where the Commissioner is satisfied, that the items were vouched before the ordinary, and passed by him, as charges against the general estate, in the nature of expenses thereof, I think he may venture, at the end of 17 years, to regard these charges as proved prima facie. But it appears, on the face of the return, that only part of the items were vouched. Of those not vouched the Commissioner should require evidence; but that degree of evidence should satisfy him, which may be expected to be produced after such a lapse of time.
I had forgotten, at the proper place, to make an observation in regard to the furniture. I do not think it was evidence of unfaithfulness, in these administrators, under the circumstances of this case, that they did not sell this property. Yet, if they thought proper to retain it, and make use of it, they must reproduce it in as good condition as they received it, or account for the value of such of it as was lost, or for the injury of it, as the case may be, But, I do not think they should be made liable, in such case as this, for interest upon it.
Let the case be remanded to the Circuit Court, and the report to the Commissioner, to make up the accounts on the principles of this decree. We do not regard the points made in the 3rd and 7th grounds of appeal, concluded in the decree.
Decree modified accordingly.
Dunkin and Wardlaw, CC. concurred.
Dargan, Ch., having been of counsel, did not sit in the case.

Decree modified.

 1 Hill Ch. 336,

 1 Sch, & Lef. 343.

 Rice Eq. 343.

 2 Strob. Eq. 105.